IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-00526-GCM

JOE HAND PROMOTIONS, INC.,

Plaintiff,

v.

PABLO DANIEL LOPEZ,
FAMILY MARTIAL ARTS, INC.,

Defendants.

ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Default Judgment [ECF Doc. 12], which was filed on July 21, 2020 after the Clerk's Entry of Default as to Family Martial Arts, Inc. and Pablo Daniel Lopez. The Motion is now ripe for consideration and the Court finds the following.

### I. PROCEDURAL BACKGROUND

On September 27, 2018, Plaintiff filed this Complaint for statutory damages pursuant to willful violation of 47 U.S.C. § 605 or willful violation of 47 U.S.C. § 553 and seeking attorneys' fees, interests, and costs under the same. ECF Doc. 1. The Court has subject-matter jurisdiction over the Complaint, as this case arises under the laws of the United States. 28 U.S.C. § 1331 (2018). Venue is proper in the Western District of North Carolina, as a substantial part of the events related to the claims occurred in this District and/or Defendants reside in the District.

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, Defendants Family Martial Arts, Inc. ("FMA") and Pablo Daniel Lopez could be served following the state law of North Carolina. Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A). Defendant FMA was properly served pursuant to N.C. Gen. Stat. § 55D-33 as of December 4, 2018. N.C. R. Civ. P. 4(j)(6); ECF Doc. 6. Defendant

Lopez was properly served by publication as of July 20, 2019. N.C. R. Civ. P. 4(j1); ECF Doc. 9. The deadline for FMA to respond was December 26, 2018, while the deadline for Defendant Lopez to respond was August 29, 2019. After neither Defendant filed a response to the Complaint, Plaintiff filed a Motion for Entry of Default on June 23, 2020 and the Entry of Default as to Defendant FMA and Defendant Lopez was filed by the Clerk of the Court on June 24, 2020. ECF Docs. 10 and 11.

## II. DISCUSSION

Entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Where the damages sought are not for a sum certain or a sum that can be made certain through computation, the plaintiff must apply to the Court for default judgment. Fed. R. Civ. P. 55(b). When a defendant is in default, the well-pleaded factual allegations of the complaint are deemed to be admitted by the defendant, but conclusions of law and the amount of damages are not. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). A court must then "determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Id.* The plaintiff bears the burden of proving that judgment should be granted by way of a motion for default judgment. *Silvers. v. Iredell Cnty. Dep't of Soc. Servs.*, No. 5:15-cv-00083-RLV-DCK, 2016 WL 427953, at *6 (W.D.N.C. Feb. 3, 2016). Whether default judgment should be entered rests "in the sound discretion of the District Judge." *Papagianakis v. The Samos*, 186 F.2d 257, 263 (4th Cir. 1950).

The following facts were alleged in Plaintiff's Complaint and are, therefore, deemed admitted pursuant to Defendants' failure to appear. Plaintiff is a company which specializes in distributing and licensing premier sporting events and it has invested a considerable amount of time and money to build a loyal customer base and retain customers. ECF Doc. 1, ¶ 8.

Accordingly, Plaintiff was granted the exclusive right to license and distribute the broadcast of the *Ultimate Fighting Championship® 202: Diaz v. McGregor 2* ("Program") to commercial establishments in the United States. *Id.*, ¶ 9. The Program broadcast originated via satellite uplink and was then re-transmitted interstate to cable systems and satellite television companies via satellite signal. *Id.* Plaintiff entered into various agreements with commercial establishments in North Carolina to allow them to exhibit the Program to their patrons in exchange for a fee. *Id.*, ¶ 10. Defendants did not contract with Plaintiff or pay a fee to obtain the proper license or authorization to exhibit the Program in their establishment. *Id.*, ¶ 11. By unauthorized satellite transmission or by unauthorized receipt over a cable system, Defendants willfully intercepted or received the interstate communication of the Program, or assisted in such actions, and exhibited the Program to their patrons. *Id.*, ¶ 12. Hence, Defendants pirated Plaintiff's licensed exhibition of the program, infringed upon Plaintiff's exclusive rights, and did so willfully with the purpose and intent to secure a commercial advantage and private financial gain. *Id.*, ¶ 14.

Plaintiff claims these wrongful actions constitute a violation of 47 U.S.C. § 605 and 47 U.S.C. § 553. When plaintiffs seek damages under both statutory schemes, "courts evaluate their claims under Section 605 because it provides for a higher potential recovery." *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 707 (W.D.N.C. 2012). The facts alleged in Plaintiff's Complaint and set forth above are admitted and the allegations are sufficient to establish liability for a violation of 47 U.S.C. § 605.

To determine whether Defendant Lopez was vicariously liable for violating 47 U.S.C. § 605, courts look at (1) whether the individual was an owner, officer, or employee of the corporation with "a right and ability to supervise" the infringing activity and (2) whether the individual had a "direct financial interest in the proceeds of the exhibition." *J & J Sports Prods.,*

*Inc. v. Beer 4 U, Inc.*, No. TDC-18-2602, 2019 WL 5864499, at *4–5 (D. Md. Nov. 8, 2019). At the second factor, courts can look at indicia such as ownership interest, whether the illegal broadcast was advertised to be shown at the establishment, whether a cover was charged at the establishment that night, whether the illegal broadcast was intended to draw customers in, and whether there were patrons purchasing food or drink during the event. *Id.* at *5.

Here, Defendant Lopez has admitted that he "was an officer, director, shareholder, member, and/or principal of the entity owning and operating the Establishment" with "a right and ability to supervise the activities of the Establishment" and "an obvious and direct financial interest in the activities of the Establishment." ECF Doc. 1, ¶ 3. A basic showing of the factors necessary for vicarious liability exists. However, in addition, Plaintiff has provided an affidavit from its investigator who attended the illegal event in question. *See* ECF Doc. 13-4. At the event, the investigator was greeted by a man named Pablo, presumably Defendant Lopez, who informed the investigator that the program would begin shortly. *Id.* at 1. The man named Pablo explained that the investigator would be charged a cover fee when the program began and that Defendant FMA would serve soft drinks and pizza during the event. *Id.* Up to eighteen patrons entered the establishment during the event, while Defendant FMA was charging a twenty-dollar cover fee. *Id.* at 2. Moreover, advertisements for Defendant FMA's event were posted on its Facebook page. ECF Doc. 14-1. These factors are the types of factors courts use to conclude there was a direct financial interest in the proceeds of the exhibition for an individual defendant such as Defendant Perez. The factors required to find vicarious liability for Defendant Perez are present.

Once liability is established in a motion for default judgment, a court must determine damages. *Id.* at 706. Such a determination is made independent of liability, a court cannot accept as true factual allegations of damages. *Id.* A court "*may* conduct an evidentiary hearing to

determine damages," but "it is not required to do so." *Id.* (emphasis added). Instead, a court may rely "on affidavits or documentary evidence in the record to determine the appropriate sum." *Id.*

Courts can award damages by "utilizing a flat damage amount." *Id.* at 707 (quoting *Integrated Sports Media, Inc. v. Buruca Bros.'s Va., Inc.*, No. 1:11-cv-839, 2011 WL 5873078, at *5 (E.D. Va. Nov. 1, 2011)). The flat damage amount may be awarded in a sum no less than $1,000 and up to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff requests that the Court grant a flat damage amount of $10,000.

To support its claim for statutory damages Plaintiff has provided evidence that, if Defendants had legally licensed the Program, the licensing fee for the Establishment would have been $788.00. *See* ECF Doc. 13-3. No such amount was paid. Plaintiff also claims it should receive compensation to account for profits gained through the cover charge and sale of drinks and/or food during the unlawful broadcast. ECF Doc. 13 at 7. Plaintiff further contends it is impossible to determine the full extent of profits lost due to a number of factors relating to loss of goodwill, the costs of enforcing Plaintiff's licensing rights against piracy, and the costs of investigating piracy. ECF Doc. 13 at 7–8. While Plaintiff requests that the Court award damages of up to $10,000 pursuant to Section 605(e)(3)(C)(i)(II), it is difficult to see how the statutory damages amount should be so high where the only actual damages for which Plaintiff has provided evidentiary support include the $780 licensing fee. *See id.* at 7–8. Nevertheless, the Court recognizes that there are additional damages relating to the costs of enforcing Plaintiff's rights against piracy, and Plaintiff filed the affidavit of its investigator, thereby confirming that an investigator was had. *See* ECF Doc. 13-4. Therefore, the Court finds it appropriate to award a flat rate sum of $2,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II).

The Court may increase the amount of statutory damages to not more than $100,000.00 where a violation is willful and for "direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). "The primary purpose behind this provision is to deter future violations." *Romenski*, 845 F. Supp. 2d at 707. The *Nalley* factors are relevant when determining the damage award, which include: "the severity of the violation; the degree of harm to the plaintiff; the relative financial burdens of the parties; and the purpose to be served by imposing statutory damages." *J & J Sports Prods., Inc. v. Olmos*, No. 5:08CV33-V, 2010 WL 625283, at *2 (W.D.N.C. Feb. 19, 2010); *see also Romenski*, 845 F. Supp. 2d at 707–08 (using the *Nalley* factors when considering whether to increase damages for willful violation of 47 U.S.C. § 605).

Defendant FMA is a commercial establishment that could not have obtained transmission of the Program and displayed the Program to its patrons without having willfully undertaken wrongful actions to intercept and/or receive and broadcast the Program. To do so lawfully would have required Defendants to contract with Plaintiff or pay a fee to obtain the proper license or authorization to exhibit the Program in its establishment. Further, by default Defendants admitted to having willfully undertaken to unlawfully broadcast the Program to patrons. Therefore, it is appropriate to enhance the damages amount accordingly.

Plaintiff requests enhanced damages in the amount of $5,000 to achieve the statutory goals of restitution and deterrence. In consideration of the *Nalley* factors, the Court recognizes that this violation was not of the severity that caused significant harm to Plaintiff in that Defendants displayed the Program to—at most—eighteen patrons. While the degree of harm to Plaintiff is not necessarily great, Plaintiff has clearly highlighted the harm associated with defendants who illegally and willfully intercept programs for which it has paid valuable consideration. ECF Doc. 13 at 7–8. The loss of goodwill, loss of profits, and future concerns regarding further loss of

commercial entities' licensing fees where they cannot compete with those unlawfully displaying programs are all factors which favor increasing the statutory damages award. Moreover, by virtue of how displaying the Program *must* have been willful because it was impossible to do so otherwise, these are the exact concerns that prompted Congressional action through this statute. The Court agrees that an increase of the statutory award by $5,000 in this instance is appropriate.

Lastly, a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." *Id.* § 605(e)(3)(B)(iii). Plaintiff is, thereby, entitled to its attorneys' fees and costs. Plaintiff has claimed attorneys' fees for six hours of work on this litigation, at a rate of $250.00, for a total of $1,500.00. ECF 14 at 2. Plaintiff is further entitled to costs of $400 to file this case and $250 to effectuate service on Defendants. *Id.* Plaintiff is entitled to these fees and costs for an additional sum of $2,150.00.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that Plaintiff's Motion for Default Judgment should be **GRANTED**.

**IT IS HEREBY ORDERED** that Defendants Family Martial Arts, Inc. and Perez are jointly and severally liable for the violations of 47 U.S.C. § 605 and Plaintiff's Motion for Default Judgment is **GRANTED**;

**IT IS FURTHER ORDERED** that damages are awarded as follows:

| | | |
|---|---|---|
| **a.** | Violation of Title 47 U.S.C. § 605(e)(3)(C)(i)(II): | $ 2,000.00 |
| **b.** | Violation of Title 47 U.S.C. § 605(e)(3)(C)(ii): | $ 5,000.00 |
| **c.** | Attorneys' Fees: | $ 1,500.00 |
| **d.** | Costs: | $ 650.00 |
| **e.** | Total Damages Award: | $9,150.00 |

**SO ORDERED**.

Signed: October 27, 2020

Graham C. Mullen
United States District Judge